IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

SHARON R. DEVINE                                              PLAINTIFF

    v.         Case No. 04-3018

FEDEX FREIGHT EAST, INC. and
HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY                                             DEFENDANTS

## MEMORANDUM OPINION & ORDER

Plaintiff brings this action pursuant to the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, challenging defendants' decision to deny her application for long-term disability benefits. Separate Defendant Hartford Life and Accident Insurance Company (hereinafter "Hartford") submitted the administrative record (the "AR") that was before the claims administrator. (Doc. 12) In addition, the plaintiff has submitted a "supplemental administrative record" (Doc. 15), which contains information not provided to Hartford for its initial determination of benefits or for its review on appeal. The parties have submitted briefs (Docs. 14, 16) on the issues before the Court and the matter is now ripe for consideration. For the reasons set forth herein, the decision of the defendants will be upheld, the plaintiff's claim will be denied, and this case will be dismissed.

### Background

1. Plaintiff worked for Fedex Freight East, Inc. ("FedEx")

1

as a Pricing Applications Analyst.  According to FedEx's written job description, plaintiff was "responsible for applying proper rates to freight bills, quoting charges on potential shipments, handling disputes and questions regarding charges as assessed, and processing overcharge and allowance claims."  (AR 152)  The job included the following "Essential Duties and Responsibilities":

- * Rate all freight bills
- * Provide rate quotes to customers for potential shipments
- * Communicate with customers to resolve errors of disputes regarding freight bill charges
- * Audit bills and correct charges as required
- * Update bills to add accessorial charges
- * Audit bill of lading masks for accuracy and update as required
- * Maintain files and programs for calculating allowance refunds
- * Calculate and approve charges due cartage agencies
- * Generate and provide rate ponies (customer specific price list) to customers

(AR 152) Further, the "Physical Requirements" of the job included:

- * Standing and walking . . . . . . . . . . . . . . 5%
- * Lifting (up to 25 lbs) . . . . . . . . . . . . . 5%
- * Close work on computer screens . . . . . . . . . 90%

(AR 153)

    2.  Plaintiff participated in an employee benefits plan sponsored by FedEx and issued and administered by Hartford.  On or

about March 20, 2002, FedEx's Health Benefits Department submitted an application for long-term benefits on plaintiff's behalf to Hartford. (AR 148-160) The application reflected that plaintiff had been employed with FedEx for over seven years. (AR 149) In addition, the application reflected that plaintiff's last work day was October 23, 2001, due to "low back pain; leg pain; neck, shoulder and arm pain". (AR 155)

3. The employee benefits plan is funded by Hartford policy GLT-674188. (AR 2) Under the terms of the plan, an employee is eligible for long-term disability benefits if:

1. you become Disabled while insured under this plan;
2. you are Disabled throughout the Elimination Period;
3. you remain Disabled beyond the Elimination Period;
4. you are, and have been during the Elimination Period, under the Regular Care of a Physician; and
5. you submit Proof of Loss satisfactory to us.

(AR 17) The plan further defined disability as follows:

**Disability** or **Disabled** means that during the Elimination Period and for the next 12 months you are prevented by:

1. accidental bodily injury;
2. sickness;
3. Mental Illness;
4. Substance Abuse; or
5. pregnancy,

from performing one or more of the Essential Duties of Your Occupation, and as a result your Current Monthly Earnings are no more than 80% of your Indexed Pre-disability Earnings.

(AR 28) An **Essential Duty** means a duty that:

1. is substantial, not incidental;
2. is fundamental or inherent to the occupation; and
3. can not be reasonably omitted or changed.

3

Further, "[t]o be at work for the number of hours in your regularly scheduled workweek is also an Essential Duty." (AR 28)

In the policy the "Elimination Period is the period of time you must be Disabled before benefits become payable. It is the last to be satisfied of the following:

1. the first 180 consecutive day(s) of any one period of Disability; or
2. with the exception of benefits required by state law, the expiration of any Employer sponsored short term disability benefits or salary continuation program.

(AR 15)

4. The documentation submitted in support of plaintiff's claim for disability benefits reflects the following:

\* On March 6, 2002, D. Luke Knox, M.D., completed the Attending Physician's Statement of Disability in connection with the plaintiff's Application for Long Term Disability Income Benefits. (AR 104-105) Dr. Knox listed his diagnosis as "L 4-5 Deg[enerative] Disc" disease and "neck and L[eft] arm pain." (AR 104) Dr. Knox reported that he began treatment of the plaintiff for her condition in June of 1999. (AR 104) Although Dr. Knox listed the onset of plaintiff's condition as May of 1999, in her application, the plaintiff claimed the condition's onset was the Spring of 1997. (AR 138)

\* Ronald R. Reese, M.D., also completed the Attending Physician's Statement of Disability in connection with the plaintiff's Application for Long Term Disability Income Benefits.

4

(AR 162-163) Dr. Reese listed his diagnosis as "back pain." (AR 162) Dr. Reese reported April 1999 as both the onset for the condition and the date he began treatment for the condition. (AR 162) In his report, Dr. Reese indicated some impairment with respect to "Keyboard use/repetitive hand motion." (AR 163)

* Medical records were received from Dr. Knox, Dr. Reese, Dr. David Cannon, and the Northwest Arkansas Neurosurgery Clinic.

* Initially, the plaintiff sought treatment for her pain from Dr. Reese, her primary-care physician, in April of 1999. Dr. Reese referred her to Dr. Knox, a neurosurgeon, for her complaints of pain. (AR 173-174) It appears that plaintiff's last appointment date detailed on the medical records from Dr. Reese's office was in February of 2002. (AR 173)

* An MRI of the plaintiff's Lumbar Spine conducted on May 7, 1999 indicated early degenerative disease at L4-5 and L5 - S1 level. The MRI also indicated small central disc herniation at L4-5 producing some flattening of the thecal sac. (AR 111)

* Dr. Knox treated the plaintiff with conservative measures with respect to her back and leg pain in July and August of 1999, noting that "she is able to get some relief with chiropractic manipulations on an occasional basis," and that she probably aggravates her condition "by picking up her children." (AR 119-120)

* The plaintiff was seen again by Dr. Knox for a follow up

visit on May 11, 2001. Dr. Knox noted that the plaintiff has had a "recurrence of her lumbago over the past month." The plaintiff was taking Ultram and Vioxx to relieve her leg pain; therefore, back pain was her primary complaint, rated at a 2-6 out of 10 on a pain scale. Dr. Knox ordered another MRI scan. (AR 118)

\* An MRI scan was conducted and reviewed by Dr. Knox on June 4, 2001. Comparing the 2001 MRI with the 1999 MRI, Dr. Knox noted "it may possibly be ever-so-slightly better, but still has the bulging disc at 4-5." (AR 117) Dr. Knox recommended that the plaintiff continue with Vioxx and "try to get over this with increasing her exercise tolerance, etc." (AR 117)

\* Dr. Knox saw the plaintiff on October 25, 2001 for a follow-up. Dr. Knox noted that the plaintiff complained of "marked worsening pain in her neck and left arm over the past four to six weeks." (AR 116) Dr. Knox noted that the plaintiff was "quite frustrated with her failure of conservative measures . . . [and] is ready to consider other options." (AR 116) Dr. Knox found "no evidence of motor or sensory deficit with the exception of a weak triceps on the left and diminished sensation over the C6 dermatome." Dr. Knox ordered another MRI and gave the plaintiff a prescription for Hydrocodone. (AR 116)

\* The October 2001 tests ordered by Dr. Knox revealed very mild narrowing of C3-4 and C5-6 intervertebral discs. (AR 108-109)

\* The plaintiff was again seen by Dr. Knox on December 19,

2001. Dr. Knox noted that the plaintiff continued to have aches and pains in the neck and arm pain, as well as back and leg pain. Although the plaintiff's complaints had improved somewhat, Dr. Knox noted that the plaintiff "does not believe she is able to get back to her job requirements." (AR 115) Dr. Knox authorized a return to physical therapy and ordered that the plaintiff "to remain out of work until she feels she is able to sustain a desk job for eight full hours." (AR 115) Dr. Knox referred the plaintiff to "the pain clinic for further evaluation" and to "Dr. Runnels [of Dr. Knox's clinic] . . . for conservative spine care." (AR 115)

* Specifically, on December 19, 2001, Dr. Knox noted that over the course of his treatment of the plaintiff, she was "found to have significant cervical spondylosis as being the culprit of her neck and arm discomfort as well as a central disc herniation at L4-5 as well as lumbar spondylosis causing her difficulty with back and leg pain." (AR 114) Dr. Knox noted that despite physical therapy, the plaintiff "is unable to sit more than one hour at a time and her current job requirements require her to sit at a computer all day long. I do not believe she will be able to pursue her previous employment at this point." (AR 114) Dr. Knox stated that the plaintiff was "currently taking Ultram and ibuprofen . . . [and] has discontinued all narcotics." (AR 114)

* The plaintiff was seen by Dr. David Cannon of the Pain Management Center on January 9, 2002. (AR 101-103) Dr. Cannon

7

noted that the plaintiff complained of a constant aching pain in her lower back, left shoulder and arm and leg. (AR 101) The plaintiff also complained of numbness in the 3rd, 4th, and 5th fingers on the left hand, in the left foot and toes as well as in the left hip and buttocks. Dr. Cannon noted that the plaintiff rated her worst pain as a 10 out of 10 and her least severe pain as a 5 out of 10. (AR 101) Dr. Cannon prescribed her a TENS unit. Dr. Cannon also set the plaintiff up for a epidural and refilled the plaintiff's prescription for Ultram. (AR 103)

* The plaintiff received epidural injections from Dr. Cannon on March 25, 2002 and April 17, 2002. (AR 99-100)

* The plaintiff was seen by Vincent B. Runnels, M.D., of Northwest Arkansas Neurosurgery Clinic on April 3, 2002. (AR 113) Dr. Runnels was a physician in the same clinic as Dr. Knox. Dr. Runnels noted that Dr. Knox referred the plaintiff to him for a second opinion. The plaintiff complained of low back pain, bilateral hip pain which alternates sometimes to both thighs. The plaintiff also complained of neck and left shoulder blade pain, some pain in her elbow and tingling in her fingers. (AR 113) Dr. Runnels prescribed Bextra and Ultram, back exercises, posture correction, massage and traction. Dr. Runnels noted that "she has very minimal disease and I think she should be able to return to work in a week or so. I do not think she is highly motivated." (AR 113)

5. On June 7, 2002, Hartford denied plaintiff's claim for long-term disability benefits, explaining:

> Based on information in your file, your Elimination Period extended from 10/23/01 through 4/23/02, which was the end of your salary continuation. A review of the job description for Pricing Applications Analyst reveals that the Essential Duties of your occupation include rating bills, customer service duties, auditing bills of lading, and resolving customer complaints.
>
> On an Attending Physician's Statement, Dr. Reese indicated your diagnosis as back pain. He indicated that you were limited to sitting for less than an hour, and that you had been referred to Dr. Knox for treatment.
>
> On an Attending Physician's Statement dated 3/6/02, Dr. Knox indicated your diagnosis as L4-5 Degenerative Disc Disease. In regards to comment on your functionality, he indicated that he would defer to a Functional Capacities Evaluation (FCE) to determine your limitations.
>
> The medical records received from Northwest Arkansas Neurosurgery Clinic indicate that your last visit with Dr. Knox was on 12/13/01. At that time, he referred you to physical therapy and to a pain clinic for further evaluation. He advised you to see Dr. Runnels if you needed to return. You then saw Dr. Runnels on 4/3/02. In a letter to Dr. Reese dated 4/8/02, Dr. Runnels stated that you have very minimal disease and that you should be able to return to work "in a week or so."
>
> A review of records received from Dr. Reese does not indicate that he is actively treating you for back pain. Also, the Attending Physician's Statement he submitted was done prior to your last visit with Dr. Runnels. While you might have been unable to perform your occupation for some period of time, the information received does not indicate that you were unable to do so at any time on or after 4/15/02.
>
> In summary, the documentation in your file does not support that you were unable to perform one or more of the Essential Duties of Your Occupation throughout and beyond the Elimination Period. As a result, your claim for benefits has been denied, and no benefits are payable to you at this time.

(AR 84-87)

6. In the June 7, 2002 denial of benefits letter, Hartford advised the plaintiff of her appeal rights:

> If you do not agree with our denial, in whole or in part, and you wish to appeal our decision, you or your authorized representative must write to us within one hundred eight (180) days from your receipt of this letter. Your appeal letter should be signed, dated and clearly state your position. Along with your letter, you may submit written comments, documents, records and other information related to your claim.
>
> Once we receive your appeal, we will again review your entire claim, including any information previously submitted and any additional information received with your appeal.

(AR 86)

7. Plaintiff retained counsel and appealed the denial of benefits on November 20, 2002. (AR 79) The plaintiff did not submit any additional information with her appeal of the denial of benefits. (AR 79)

8. On December 9, 2002, Hartford acknowledged receipt of the plaintiff's appeal. (AR 78)

9. On January 27, 2003, Hartford notified plaintiff's counsel of its decision to uphold its original decision to deny the plaintiff's claim for long term disability benefits. (AR 59-61)

**Discussion**

\*   **Standard of Review**

1. ERISA provides a plan beneficiary with the right to judicial review of a benefits determination. *See* 29 U.S.C. §

1132(a)(1)(B). A denial of benefits by a plan administrator must be reviewed *de novo* unless the benefit plan gives the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan, in which case the administrator's decision is reviewed for an abuse of discretion. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Under the terms of plaintiff's employee benefits plan, the plan administrator has "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions" of the plan. (AR 27) Accordingly, defendants' decision will be reviewed for an abuse of discretion.

2. Under the abuse-of-discretion standard, the Court must determine whether a reasonable person could have reached the same decision. *See House v. Paul Revere Life Ins. Co.*, 241 F.3d 1045, 1048 (8th Cir. 2001). This inquiry focuses on the presence or absence of substantial evidence supporting the administrator's decision. *Id.* While the administrator's decision need not be supported by a preponderance of the evidence, there must be "'more than a scintilla.'" *Id.* (citations omitted).

* **Record on Review**

3. Hartford has submitted the administrative record (the "AR") that was before the claims administrator. (Doc. 12) In addition, the plaintiff has submitted to the Court a "supplemental administrative record" which contains information not provided to

11

Hartford for its initial determination of benefits or for its review on appeal. (AR 15)

4. The plaintiff had one hundred eighty (180) days in which to appeal Hartford's initial determination and submit any additional information she wished to be considered in the re-evaluation of her claim by the Disability Claim Appeal Unit. Plaintiff offers no explanation as to why she did not submit the additional documentation contained in the proposed "supplemental administrative record" to the Disability Claim Appeal Unit during this time frame. Even if plaintiff could demonstrate good cause for failing to timely submit the documentation to the Appeals Committee, "[w]hen reviewing a denial of benefits by an administrator who has discretion under an ERISA-regulated plan, a reviewing court 'must focus on the evidence available to the plan administrators at the time of their decision and may not admit new evidence ....'" *King v. Hartford Life and Acc. Ins. Co.*, 414 F.3d 994, 999 (8th Cir. 2005) (citation omitted). Thus, the "supplemental administrative record" submitted by plaintiff will not be considered by the Court.

   **\*    Defendants' Denial of Benefits**

5. In its initial decision denying plaintiff benefits, Hartford found that plaintiff's file did not support that she was unable to perform one or more of her job's Essential Duties

throughout and beyond the Elimination Period.[1]   (Plaintiff's Elimination Period extends from 10/23/01 through 4/23/02.)

Specifically, Hartford noted that the plaintiff had been diagnosed with L4-5 Degenerative Disc Disease.  In addition, Hartford noted that Dr. Knox last saw the plaintiff in December of 2001, at which time he referred the plaintiff to physical therapy, and a pain management clinic; and, advised the plaintiff to see Dr. Runnels if she needed to return.  (AR 86) The plaintiff returned to see Dr. Runnels on 4/3/02, at which time Dr. Runnels opined that the plaintiff should be able to return to work "in a week or so." (AR 86)

Although Dr. Reese also completed an Attending Physician's Statement in connection with plaintiff's application for long-term disability benefits, Hartford stated that Dr. Reese did not indicate that he was actively treating the plaintiff for back pain, and the information he submitted appeared to be based on an examination by Dr. Reese that occurred prior to the plaintiff's last visit with Dr. Runnels.  (AR 86)

---

[1]The "Elimination Period is the period of time you must be Disabled before benefits become payable.  It is the last to be satisfied of the following:
    1.   the first 180 consecutive day(s) of any one period of Disability; or
    2.   with the exception of benefits required by state law, the expiration of any Employer sponsored short term disability benefits or salary continuation program.

(AR 15) Hartford calculates plaintiff's "Elimination Period" to extend from 10/23/01 through 4/23/02.  (AR 85) The plaintiff does not contest Hartford's calculation of plaintiff's "Elimination Period."

Hartford concluded that although the plaintiff might have been unable to perform her occupation for some period of time, the information received does not indicate that the plaintiff was unable to do so at any time on or after 4/15/02. (AR 86)

6. Then, Hartford denied plaintiff's appeal, again noting the fact that Dr. Runnels indicated minimal findings and opined that the plaintiff should be capable of returning to work within "a week or so" of 4/3/02. (AR 59-61) Hartford explained that the plaintiff, on appeal, had not submitted any subsequent medical documentation that would indicate a deterioration of her condition, or show "limitations or restrictions imposed by any physician that would prevent her from performing the Essential Duties of her occupation beyond 4/23/02." (AR 60) On appeal, Hartford concluded that the plaintiff's documentation "does not establish that she satisfies the policy definition of Disability throughout and beyond the Elimination Period." (AR 61)

7. As set forth above, the decision to deny plaintiff long-term disability benefits is being reviewed by this Court for abuse of discretion. Clearly, the most recent medical records and opinions available to Hartford indicated that the plaintiff could return to work within "a week or so" of 4/3/02. The information before Hartford was clearly sufficient to support its denial of benefits. *See House v. Paul Revere Life Ins. Co.*, 241 F.3d 1045, 1048 (8th Cir. 2001).

**Conclusion**

8. Based on the foregoing, the Plaintiff is not entitled to a judgment against the defendants. Accordingly, the Plaintiff's claim is hereby **DENIED** and this case is **DISMISSED**. Each party shall bear its own costs and attorney's fees.

IT IS SO ORDERED this 15th day of March 2006.

/S/JIMM LARRY HENDREN
JIMM LARRY HENDREN
UNITED STATES DISTRICT JUDGE